IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN L. HEINIG,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Civ. No. 1:16-cv-01698-AA

OPINION & ORDER

AIKEN, District Judge:

Plaintiff Robin Heinig seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying disability and disability insurance benefits pursuant to Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is AFFIRMED and this case is dismissed.

## BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on January 27, 2011. Tr. 508. Plaintiff alleged disability beginning July 15, 2010. *Id.* Her application was denied initially and upon review. *Id.* Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing held October 23, 2012. *Id.* On December 7, 2012, the ALJ issued a decision finding Plaintiff not disabled. *Id.* The Appeals Council denied review and Plaintiff sought review before this Court in *Heinig v. Commissioner*, 1:14-cv-1362-

MC ("*Heinig I*"). *Id.* In *Heinig I*, the parties stipulated to a remand of the matter to the Commissioner for further proceedings. On July 21, 2015, Judge Michael McShane signed an order granted the stipulated remand and a judgment was entered.

On December 10, 2015, the Appeals Council implemented this Court's Order and directed the ALJ to (1) obtain additional evidence concerning Plaintiff's impairments; (2) further consider treating and non-treating source opinions as appropriate; (3) further consider Plaintiff's maximum residual functional capacity and provide rationale and citation to the record; (4) obtain supplemental evidence from a vocational expert to determine whether Plaintiff can perform her past relevant work and/or other work in the national economy; and (5) offer Plaintiff another opportunity for a hearing. Tr. 508.

A second hearing was held on May 9, 2016. Tr. 508. On June 9, 2016, the ALJ issued a decision finding Plaintiff not disabled. Tr. 527. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 15, 2010. Tr. 511. The ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy of the feet; degenerative disc disease of the cervical spine, status post-fusion; degenerative disc disease of the lumbar spine; status-post bilateral hip replacement; and obesity. *Id.* The ALJ determined that Plaintiff's severe impairments did not meet or equal a listed impairment. Tr. 512.

The ALJ determined that Plaintiff had the RFC to perform light work with the following additional restrictions: she must be allowed to alternate between sitting and standing throughout the day; no more than frequent crawling, crouching, kneeling, stooping, balancing, or climbing of stairs or ramps; no more than occasional climbing of ropes, ladders, and scaffolds; no more

than frequent overhead reaching bilaterally; and avoid working around heights, moving machinery, and similar hazards. Tr. 513.

The ALJ found that Plaintiff was able to perform her past relevant work as a call center supervisor. Tr. 525. In the alternative, the ALJ found that Plaintiff could perform work as a mail sorter, office helper, or storage facility rental clerk. Tr. 527. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts that the ALJ erred by (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the medical opinion of treating physician Alan Mersch, D.O.; (3) improperly rejecting the opinion of physician's assistant Emily Rogers; (4) improperly categorizing Plaintiff's past relevant work; (5) failing to follow the remand instructions of the Appeals Council; and (6) failing to meet the Commissioner's burden at step five based on an improper formulation of Plaintiff's RFC.

### I. Plaintiff's Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by rejecting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, or a claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). A claimant's daily activities may undermine her allegations if the claimant spends a substantial part of her day engaged in activities that are transferrable to a work setting or if the activities contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

At the hearing, Plaintiff testified that she has a congenital hip condition and that, despite hip replacement surgery, she continues to have difficulty with her right side. Tr. 545. She testified that she has worsening neuropathy of the feet, which causes her to lose feeling and sensation in her feet, but also to suffer constant foot pain. *Id.* She testified that her foot condition causes her to trip and fall, particularly on stairs. *Id.* Plaintiff testified that she is "on some really good pain medication" for her feet, but that "it just masks the pain," and doesn't completely take it away. Tr. 547. Plaintiff described the pain in her feet as burning, pins and needles, and spasming. *Id.* Plaintiff also testified that she has a neck conditions which has caused her to suffer numbness in her fingers, which began six or seven months before the hearing. Tr. 546. The numbness has caused Plaintiff to experience difficulty picking things up. *Id.* Plaintiff finds it painful to carry things and she has a tendency to drop them. *Id.* Plaintiff also testified that she suffers from pain in her lower back due to arthritis, as well as fibromyalgia. Tr. 547. The ALJ found Plaintiff's testimony less than fully credible based on a number of factors, discussed below. Tr. 515.

### A. Reason for Leaving Past Employment

The ALJ noted that Plaintiff stopped working for her last employer because of a business-related lay-off, and not due to any allegedly disabling impairments. Tr. 515. That conclusion is consistent with Plaintiff's testimony at her original hearing. Tr. 39 ("Harry & David decided they no longer needed my position."). This is an appropriate consideration in the ALJ's

credibility analysis. *See, e.g., Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ also noted that Plaintiff's medical condition was substantially similar prior to the lay-off, which suggested that Plaintiff's impairments did not prevent her from maintaining employment. Tr. 516. There is evidence in the record to support the ALJ's conclusion: On July 13, 2009, Plaintiff was seen by Mark Greenberg, M.D., where she reported "continuous and constant" burning and stabbing pain, which she rated at 5/10, but which did not prevent her from working full time at Harry and David. Tr. 269.

Although Plaintiff urges a different reading of the record, the Court concludes that the ALJ's analysis is reasonable.

### B. Inconsistent Statements

The ALJ noted that Plaintiff's hearing testimony concerning the side effects of her medication was not consistent with the statements she made to her treatment providers. Tr. 514. Inconsistent statements are a valid basis for finding a claimant not credible. *Ghanim*, 763 F.3d at 1163.

At the hearing, Plaintiff testified that she suffers "extreme fatigue" and cloudiness or inability to focus due to her medications. Tr. 548, 554. Plaintiff testified that the side effects of her medication have generally been consistent, except for a month-long period where her Percocet does was increased and she suffered increased side effects. Tr. 556. Plaintiff's treatment notes, however, indicate that she generally denied such side effects from her medications. *See, e.g.,* Tr. 946, 961, 969 (Plaintiff "denies mental cloudiness associated with medications use; . . . denies medication related fatigue; denies drowsiness.").

The ALJ reasonably concluded that this inconsistency undermined Plaintiff's credibility regarding her limitations.

### C. Daily Activities

The ALJ also noted that Plaintiff's daily activities were inconsistent with her alleged degree of limitation. Tr. 521. Daily activities can support the discounting of a claimant's alleged limitations when the claimant's activities either contradict her other testimony or meet the threshold for transferable work skills. *Molina*, 674 F.3d at 1112-13. In evaluating a claimant's purported limitations, the ALJ need not consider whether the claimant's activities are equivalent to full-time work; it is sufficient that the claimant's activities "contradict claims of a totally debilitating impairment." *Id.* at 1113.

Plaintiff spends her time watching television, reading on her Nook, or going outside to walk. Tr. 553. Plaintiff has a driver's license and drives "when I have to," including to the grocery store, the post office, and the pharmacy. Tr. 549-50. Plaintiff testified that she cannot sweep, mop, vacuum, or scrub, but that she cleans parts of her house, and does other household chores such as washing dishes or cooking three nights per week. Tr. 550. Plaintiff also testified that she volunteers regularly at the animal shelter, although she limits her volunteer work to feeding and socializing with the cats and avoids doing anything strenuous. Tr. 551. Plaintiff testified that it usually took her "a day or two to recover" after any kind of exertion. Tr. 557.

Plaintiff's treatment notes, however, indicate that Plaintiff "stays very busy volunteering at the animal shelter, and is currently fostering three kittens," and in July 2014 noted that Plaintiff "continues to stay busy volunteering at the animal shelter." Tr. 972, 965. There are indications that Plaintiff also traveled out of state and engaged in some exercise, but the extent of these activities are unclear. Tr. 914, 930, 976. Plaintiff reported to Dr. Grunwald that her hobbies include camping, boating and fishing. Tr. 335.

The ALJ concluded that Plaintiff's daily activities undermine her claims regarding the intensity, persistence, and limiting effects of her symptoms. Tr. 521. The ALJ also concluded that the record indicated that Plaintiff's daily activities "have, at times, been somewhat greater than generally reported." *Id.* The Court concludes that the ALJ adequately supported his conclusion that Plaintiff's daily activities contradicted her claimed limitations. Although Plaintiff offers an alternative interpretation of the record and of Plaintiff's daily activities, the ALJ's conclusion is rational and the Court declines to disturb it.

The Court concludes that the ALJ gave sufficient clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony and those reasons were supported by substantial evidence in the record.

**II.  Dr. Mersch**

Plaintiff asserts that the ALJ erred by rejecting the opinion of Dr. Mersch, Plaintiff's treating physician. The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.* Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily

activities, or internal inconsistency. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan v. Comm'r*, 169 F.3d 595, 601-03 (9th Cir. 1999).

When a non-examining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the non-examining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Nguyen v. Colvin*, 95 F. Supp.3d 1286, 1293 (D. Or. 2015) (citing *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

In this case, the opinion of Dr. Mersch was contradicted by the opinions of the state agency consultants and by the opinion of examining physician Dr. Gregory Grunwald. Tr. 74-85, 88-101, 332-44. The ALJ was therefore required to give specific, legitimate reasons for discounting Dr. Mersch's opinion.

Dr. Mersch submitted a series of letters to the Commissioner concerning Plaintiff's impairments. In July 2011, Dr. Mersch opined that Plaintiff should be approved for disability "on a structural basis as well as a medical basis." Tr. 349. Dr. Mersch noted Plaintiff's "bad neck disorder regarding cervical disc," her "bad low back disorder," and neuropathy secondary to both of those disorders. *Id.* Dr. Mersch stated that Plaintiff had "myofascial trigger points and post traumatic fibromyalgia," as well as "medical issues related to diabetes, hyperlipidemia, hypertension, and hypothyroidism." *Id.* The ALJ gave little weight to the opinion of Dr. Mersch as put forth in the 2011 letter, noting that his "conclusory statement was unsupported by the record as a whole," the objective findings of Plaintiff's physical examination, or Plaintiff's daily activities. Tr. 522.

In July 2012, Dr. Mersch filled out a check-box medical source statement sent to him by Plaintiff's counsel. Tr. 409-12. In that form, Dr. Mersch checked boxes indicating that Plaintiff

was incapable of performing either light or sedentary work, even if given the opportunity to alternate between sitting and standing. Tr. 409-10. Dr. Mersch marked boxes indicating that Plaintiff had mild or moderate restrictions in her ability to maintain attention and concentration, as well as moderate or severe restrictions to her ability to perform activities within a schedule, maintain attendance, complete a normal workday or work week without interruptions from medically-based symptoms, or perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 411. The ALJ gave no weight to Dr. Mersch's 2012 medical source statement, finding that it was not supported by the medical evidence, objective findings, or Plaintiff's daily activities. Tr. 522. The ALJ also noted that the medical source statement provided no support or explanation for the restrictions it included. *Id.*

In March 2013, Dr. Mersch submitted a second letter, in which he once again opined that Plaintiff was disabled. Tr. 504. Dr. Mersch stated that Plaintiff would be unable to sit, stand, or walk for "more than 2 hours at a time or less than four hours per day at any situation." *Id.* Dr. Mersch "believe[d] that it would be inappropriate for her to be lifting more than the weight of a gallon of milk or a small grocery bag at any one time and not on a repetitive, regular basis." *Id.* The ALJ gave no weight to Dr. Mersch's 2013 letter because it did not contain any support for the assessed limitations. Tr. 523. The ALJ also noted that the limitations assessed by the 2013 letter were not supported by the objective findings of Plaintiff's physical examinations or her activities of daily living. *Id.*

In March 2016, Dr. Mersch submitted a third letter opinion. Tr. 1060. Dr. Mersch retired from practice in October 2014 and had not treated Plaintiff since his retirement. *Id.* Dr. Mersch believed that Plaintiff was disabled by degenerative disc disease of the cervical spine, status post-fusion; degenerative disc disease of the lumbar spine, status-post bilateral hip replacement;

diabetes mellitus with neuropathy of the feet; anxiety; depression; and obesity. *Id.* Dr. Mersch stated that Plaintiff also had issues related diabetes, hyperlipidemia, hypertension, hypothyroidism, and post traumatic fibromyalgia. *Id.* Dr. Mersch stated that Plaintiff's pain would increase with prolonged activity and that she would be unable to sustain work, even if she was able to attend on a regular basis. *Id.* Dr. Mersch specifically noted that Plaintiff's chronic C-7 radiculopathy and post traumatic fibromyalgia resulted in chronic pain of the sort that "wears a person down." *Id.* Dr. Mersch stated that he believed that Plaintiff's reports of pain and limitation were consistent with the medical findings and that he did not believe Plaintiff to be malingering. *Id.* The ALJ gave limited weight to Dr. Mersch's opinion as expressed in the 2016 letter:

> Although Dr. Mersch had a longstanding treatment relationship with the claimant, the objective findings throughout the medical evidence of record as a whole, the claimant's repeated reports that her condition improved and [was] well managed with medication, and the claimant's activities of daily living suggest she was not as limited as Dr. Mersch alleges. Notably, Dr. Mersch finally provided some objective support for his opinion by citing to an unspecified test revealing cervical radiculopathy. He noted no other objective findings to support his opinion. By contrast, the claimant's treatment notes and physical examinations throughout the period at issue generally show her condition was stable and effectively managed with medication. Furthermore, Dr. Mersch's opinion appears to be based on the claimant's subjective reports, rather than objective findings or personal knowledge. For example, it is questionable whether Dr. Mersch had personal knowledge that the claimant stayed in bed half the day. Moreover, such an assertion is inconsistent with the claimant's activities of daily living and her 2016 hearing testimony.

Tr. 524 (internal citation omitted).

As the ALJ noted, Dr. Mersch's 2011 letter, his 2012 medical source statement, and his 2013 letter do not include any explanation of the reasons for the limitations he assessed. This is a proper basis for rejecting those opinions. *See Molina*, 674 F.3d at 1111 (an ALJ may permissibly reject a check box opinion that does not sufficiently explain the reasons for the

physician's conclusions). Upon review of the record, the Court concludes that the ALJ reasonably found these medical opinion to be conclusory and without sufficient explanation.

Plaintiff's daily activities are discussed in detail in the preceding section and the Court concludes that the ALJ reasonably interpreted Plaintiff's daily activities to be inconsistent with the limitations assessed by Dr. Mersch. As previously noted, conflict with the claimant's daily activities is a valid reason for rejecting a medical opinion. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan*, 169 F.3d at 601-03. The Court concludes that the ALJ reasonably found Plaintiff's daily activities to be inconsistent with the limitations assessed by Dr. Mersch.

The ALJ also noted that Dr. Mersch's opinion as set forth in the 2016 letter seemed to be based on Plaintiff's subjective reports. The ALJ may properly reject an opinion if it is premised on the claimant's subjective complaints and the ALJ has already validly discounted the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). As previously discussed, the Court has concluded that the ALJ properly discounted Plaintiff's subjective symptom testimony. To the extent that Dr. Mersch based his opinion on Plaintiff's subjective complaints, the ALJ reasonably rejected that opinion.

Finally, the ALJ noted that Dr. Mersch's opinion as set forth in all three letters and the medical source statement was inconsistent with the objective medical evidence and Plaintiff's treatment records. In particular, Plaintiff's treatment notes indicate a stable condition that was well controlled with medication. *See, e.g.*, 893 (Plaintiff "stable" and medication allows her to function at home and in her volunteer activities); 911, 931, 939 (Plaintiff's pain medication making "a real difference in her life,"), 343 (Dr. Grunwald conducted a physical examination and determined that Plaintiff was able to frequently lift and carry twenty pounds with periodic

breaks); *see also* Tr. 487 (Dr. Greenberg notes that Plaintiff "has been presenting with numerous complaint without objective verification on exam, which is concerning."); Tr. 799, 519 (Dennis Minister, M.D., examines Plaintiff, who denies back pain, weakness, or numbness, with normal exam results on March 31, 2014.). Such inconsistencies are a valid basis for discounting that opinion. *Tommasetti*, 533 F.3d at 1041; *Andrews*, 53 F.3d at 1042-43; *Morgan*, 169 F.3d at 601-03.

Based on the record, the Court concludes that the ALJ gave sufficient specific and legitimate reasons for discounting the opinion of Dr. Mersch.

### III. Ms. Rogers

Plaintiff asserts that the ALJ erred by rejecting the opinion of Ms. Rogers, a physician's assistant. Physician's assistants are considered "other sources" and are not entitled to the deference given to acceptable medical sources. *Molina*, 674 F.3d at 1111. An ALJ may discount the opinion of "other sources," including physician's assistants, if the ALJ "gives reasons germane to each witness for doing so." *Id.* (internal quotation marks and citation omitted).

In February 2016, Ms. Rogers submitted a physical medical source statement. Tr. 1055-58. In it, Ms. Rogers opined that Plaintiff could sit for thirty minutes before needing to stand and stand for fifteen minutes before needing to sit, for a total of less than two hours of standing or walking in an eight hour working day and about four hours of sitting in the same period. Tr. 1056. Ms. Rogers said that Plaintiff would require an option to shift from standing to sitting or walking and would require periods of walking during the workday. *Id.* Mr. Rogers believed that Plaintiff would need to walk for ten minutes every forty five minutes and would require an unscheduled break of five-to-six minutes every hour due to pain, numbness, and the adverse

effects of medication. *Id.* Ms. Rogers also believed that Plaintiff would need to elevate her legs to knee level for 80% of the work day due to pain in the lower back and legs. Tr. 1057. Ms. Rogers opined that Plaintiff could lift less than ten pounds occasionally, ten pounds occasionally with her left arm and could never lift twenty or more pounds. *Id.* Ms. Rogers believed that Plaintiff could occasionally twist, rarely climb stairs, and never stoop, crouch/squat, or climb ladders. *Id.* She also assessed limitation to Plaintiff's reaching handling and fingering: Plaintiff could grasp turn or twist 50% of the time with her left hand and never with her right, could not perform any fine manipulation or overhead reaching, and was limited to reaching in front of the body 50% of the time with her left arm and 10% of the time with her right arm. *Id.* Ms. Rogers believed Plaintiff would be off-task 25% or more of the time, would be incapable of even "low stress work," and would be absent from work more than four days per month. Tr. 1058.

The ALJ gave no weight to Ms. Rogers's opinion, finding that it was inconsistent with the medical evidence, including Ms. Rogers's own treatment notes, as well as inconsistent with Plaintiff's daily activities. Tr. 524. In particular, the ALJ pointed to Ms. Rogers's treatment notes indicating that Plaintiff's condition was stable, that she was able to perform household chores, and carry on with volunteer activities. *Id.*

A review of Ms. Rogers's treatment notes supports the ALJ's interpretation. The notes frequently show that Plaintiff "reports pain relief from current pain reliever(s) is enough to make a real difference in her life." *See, e.g.,* Tr. 911, 931, 939. In July 2014, Ms. Rogers noted that Plaintiff "feels she is doing quite well," and that her medication "is working a great deal better," and she is "sleeping pretty well." Tr. 965. Of note, Ms. Rogers indicated in May 2014 that Plaintiff "stays very busy volunteering at the animal shelter, and is currently fostering three kittens," and in July 2014 noted that Plaintiff "continues to stay busy volunteering at the animal

shelter." Tr. 972, 965. In October 2015, Ms. Roger's treatment notes indicate that Plaintiff "is doing an excellent job of having a full and rich life, despite her pain." Tr. 906. In February, 2016, Ms. Roger's reported improved paint management, with Plaintiff appearing "comfortable and relaxed." Tr. 896. In May 2016, Plaintiff's pain was reported as "stable," with Plaintiff "getting substantial benefit from her medication, which allows her to function at home and in her volunteer activities." Tr. 893.

The Court concludes that the ALJ reasonably determined that Ms. Rogers's opinion conflicted with her treatment notes, as well as Plaintiff's daily activities, as discussed in the previous sections. Accordingly, the Court concludes that the ALJ gave proper germane reasons for rejecting the opinion of Ms. Rogers.

**IV.   Appeals Council Remand Order**

Plaintiff asserts that the ALJ failed to comply with the directives of the Appeals Council's remand order, which provided as follows:

> The [ALJ's original] decision's residual functional capacity finding includes a limitation that the claimant requires the option to sit or stand "as needed," which means at will. However, the Administrative Law Judge asked the vocational expert to assume an individual who must change positions but "not at will, but throughout the day." The decision's assessment is more limiting than the hypothetical question posed to the vocational expert.
>
> It is unclear from the record whether the decision's intended assessment was an at-will or a not-at will option to change positions, which must be clarified on remand. The decision must be specific as to the frequency of the claimant's need to alternate sitting and standing.

Tr. 626 (internal citations omitted).

In the subsequent decision, the ALJ specifically found that Plaintiff "would need to be allowed to alternate between sitting and standing as needed throughout the day." Tr. 513. At the 2016 hearing, the ALJ's hypothetical question to the Vocational Expert included the limitation

that the individual "would need to be allowed to alternate between sitting and standing as needed throughout the day." Tr. 560.[1] Plaintiff asserts that the ALJ failed to meet the Appeals Council's directive that the decision "be specific as to the frequency of the claimant's need to alternate sitting and standing."

The Court is not persuaded. By the plain terms of the order, the Appeals Council was seeking to clarify whether Plaintiff RFC required her to be able to alternate sitting and standing at will or at some specific interval. In particular, the Appeals Council was concerned about an apparent discrepancy between the RFC as it appeared in the *Heinig I* ALJ decision and the less limiting restriction included in the original VE hypothetical. On remand, the ALJ appropriately clarified that the RFC required her to be able to change positions "as needed." The Appeals Council's remand order noted that "as needed" means "at will." Tr. 626. The ALJ therefore complied with the Appeals Council's directive in formulating both Plaintiff's RFC and the VE hypothetical.

## V. Past Relevant Work and Step Five Findings

Plaintiff asserts that the ALJ erred at step four by misidentifying Plaintiff's past relevant work. Plaintiff also asserts that the ALJ's step five findings were in error, based on an improper formulation of Plaintiff's RFC.

The ALJ identified Plaintiff's past relevant work as "call center supervisor," Dictionary of Occupational Titles ("DOT") No. 239.137-014, which is classified as sedentary with an SVP of 6. Tr. 525, 560. The VE testified that a hypothetical person with Plaintiff's RFC would be capable of working as a "call center supervisor." Tr. 561. The VE also testified that Plaintiff's RFC would permit work as a mail sorter, an office helper, and a storage facility rental clerk and

---

[1] Plaintiff's attorney also used "as needed" language in his hypothetical question to the VE. Tr. 563.

the ALJ incorporated that testimony into an alternative finding at step five of the analysis. Tr. 561-62; 527.

The Commissioner concedes that the ALJ identified the wrong position and that Plaintiff's past relevant work should have been classified as "supervisor, order takers," DOT 249.137-026. Although the Commissioner argues that there is no meaningful difference between the two positions with regard to Plaintiff's RFC and work as actually and generally performed, that argument amounts to impermissible *post-hoc* rationalization. *See, Stout*, 454 F.3d at 1054 (courts may not affirm the Commissioner's decision on a ground the agency did not invoke in making its decision). The ALJ's error at step four of the sequential analysis is, however, harmless in light of the ALJ's alternative findings at step five. *See, id.* at 1055 (noting that harmless error applies where the improper findings were inconsequential to the ultimate nondisability determination).

At step five of the analysis, the ALJ found that Plaintiff could perform work as a mail sorter, office helper, or storage facility rental clerk. Tr. 527. Plaintiff objected to these findings on the basis that the ALJ incorrectly assessed Plaintiff's RFC based on the ALJ's rejection of Plaintiff's subjective symptom testimony, the medical opinion of Dr. Mersch, and the other source opinion of Ms. Rogers. Pl. Reply. As set forth above, the Court has affirmed the ALJ's findings on those issues and accordingly concludes that the ALJ properly formulated Plaintiff's RFC.

The ALJ's alternative findings at step five of the analysis are therefore appropriate. As the ALJ's error in categorizing Plaintiff's past relevant work at step four was inconsequential to the ultimate non-disability determination, the Court concludes that the error was harmless.

## CONCLUSION

For the reasons set forth above, the decision of the ALJ is AFFIRMED and this case is DISMISSED. Final judgment shall be entered.

DATED this 2nd day of December, 2018.

/s/ Ann Aiken
ANN AIKEN
United States District Judge